RECEIVED

MAY 30 2019

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

Michael L. McLaughlin, pro per
c/o Wildwood Pretrial Facility
5 Chugach Ave., Bldg. # 5
Kenai, Alaska      99611-7098

IN THE DISTRICT COURT FOR THE UNITED STATES

DISTRICT OF ALASKA AT ANCHORAGE ALASKA

MICHAEL L. McLAUGHLIN,                    )
                                          )
                 Plaintiff;               )
        vs                                )
                                          )
CENTRAL  PENINSULA  GENERAL  HOSPITAL     )
(a non--profit corporation),  TRENA       )
RICHARDSON (President),  JAMES McHALE      )
(Vice  President),   IRVING  CARLISLE      )
(Secretary/Treasurer),   MARK  DIXSON,     )
SAL MATTERO,  STEVE MANLEY,   RUSSELL      )
PETERSON,  MARK PREMO,  STEVEN HORN,       )
GREGG MONTONAGA,   DEBRA  SHUEY,  JOHN     )
BRAMANTE (CPGH Directors),  MICHAEL T.     )
BLAKE, D.O.,  JASON HELTON,    RACHEL      )
GILLILAND, DEBRA A. BLIZZARD, KATELIN      )
E.  HIMES,   MATTHEW  M.  MEADE,  DIANNE   )
J. CRONIN (CPGH Staff), MICHAEL LEVY,      )
LEVI DOSS, JESSICA SMITH, HENRY KANE,      )
CY COX, T.J. COX (Nikiski Fire Dept),      )
SRGT MARK PEARSON,  SAMUEL J. WEBBER,      )
JOSEPH MINNICK  and CASEY HERSHBERGER      )
(Alaska State Troopers),                   )
                                          )
                 Defendants.              )
                                          )
_____)      Docket No. # 3.19-CV-00154-MMS

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND THE FALSE CLAIMS ACT

*** 42 U.S.C. § 1983 and 31 U.S.C. § 3729(a)(1)(A)-(C) ***

Seeking Damages and Declaratory Relief for;

FALSE ARREST/IMPRISONMENT,  ILLEGAL SEARCH,  CONSPIRACY,
MALICIOUS PROSECUTION,  NEGLIGENCE,  BATTERY,  SPOLIATION,
INTENTIONAL  INFLICTION  OF  EMOTIONAL  DISTRESS  AND  THE
DEPRIVATION OF DUE PROCESS AND EQUAL PROTECTION UNDER THE LAW

Michael L. McLaughlin, pro per
c/o Wildwood Pretrial Facility
5 Chugach Ave., Bldg. # 5
Kenai, Alaska    99611-7098

IN THE DISTRICT COURT FOR THE UNITED STATES
DISTRICT OF ALASKA AT ANCHORAGE ALASKA

MICHAEL L. McLAUGHLIN,           )
                                 )
            Plaintiff;           )
                                 )
    vs                           )
                                 )
CENTRAL  PENINSULA  GENERAL  HOSPITAL )
(a  non-profit  corporation),   TRENA )
RICHARDSON (President),  JAMES McHALE )
(Vice  President),   IRVING  CARLISLE )
(Secretary/Treasurer),  MARK  DIXSON, )
SAL MATTERO,   STEVE MANLEY,   RUSSELL )
PETERSON,  MARK PREMO,  STEVEN  HORN, )
GREGG MONTONAGA,   DEBRA  SHUEY,   JOHN )
BRAMANTE (CPGH Directors), MICHAEL T. )
BLAKE, D.O.,  JASON  HELTON,   RACHEL )
GILLILAND, DEBRA A. BLIZZARD, KATELIN )
E. HIMES,  MATTHEW M. MEADE,  DIANNE )
J. CRONIN (CPGH Staff), MICHAEL LEVY, )
LEVI DOSS, JESSICA SMITH, HENRY KANE, )
CY COX, T.J. COX (Nikiski Fire Dept), )
SRGT MARK PEARSON,  SAMUEL J. WEBBER, )
JOSEPH MINNICK and  CASEY HERSHBERGER )
(Alaska State Troopers),         )
                                 )
            Defendants.           )
                                 )
─────────────────────────────────  )    Docket No. # _____

C O M P L A I N T

COMES NOW the plaintiff, Michael L. McLaughlin, appearing In Properia

Persona and by authority of 42 U.S.C.S. § 1983, seeking to vindicate fundamental

rights afforded and secured to all citizens by federal constitutional and statutory

laws and provisions, and to expose fraudulent conduct under the False Claims Act.

JURISDICTION AND VENUE

This court is vested with jurisdiction to  entertain this action by authority

of both 28 U.S.C. § 1343(a)(3) and  § 1367(a).  Further  jurisdictional authority

rests with this court to grant  injunctive and/or decalratory  relief as is vested

upon the District Court by 28 U.S.C. §§ 2201, 2202 and 28 U.S.C. § 2283.  Authority

to hear actions under the False Claims Act is Found in 31 U.S.C. § 3729(a)(1).

Venue is proper and in accordance with the provisions of 28 U.S.C § 1391(b)(2)

where the events, acts or omissions  alleged herein  and giving rise to plaintiff's

claims occurred within the District of Alaska at or near Soldotna, Alaska.

## PARTIES TO THIS ACTION

1) Plaintiff  Michael L. McLaughlin  is party to this action alleging ongoing

conspiratorial and unconstitutional conduct (and other illicit/fraudulent activities)

by virtue of his having been injured in his person,  property, and constitutionally

protected interests as a result of the named defendant(s) illicit activities.  Your

plaintiff is a resident of the State of Alaska and a citizen of the United States.

2) Defendant Central Peninsula General Hospital (hereinafter CPGH) is known as

a quasi-governmental non-profit corporation  acting as an "acute care" health care

facility as defined in 7 AAC 12.105(a).  As such this entity contracts  with local,

state and federal governmental agencies to provide health care,  including the non-

delegable duty to  provide emergency health care,  to the  communities of  Soldotna,

Kenai, Sterling and other outlying areas within the Kenai Peninsula Borough.  This

entity is party to this action by virtue of its ongoing willfully fraudulent use of

policies, practices and customs which violate federal statutory law and plaintiff's

federally protected constitutional and statutory rights.

3) Defendant Trena Richardson is a party to this action by virtue of the fact

she,  at all times stated herein,  acted as the President of the Board of Directors

for CPGH (hereinafter "CPGH Board"), having authority to enact or declare policies,

practices, and customs employed by CPGH and its staff.  This defendant  is further

alleged to have engaged in other illicit conduct  in furtherance of the conspiracy

alleged,  all of which violated the constitutional, statutory and common law rights

of the plaintiff. This defendant, believed to be a resident of the State of Alaska

and a citizen of the United States, is being sued in both her personal and official capacities.

4) Defendant James McHale is a party to this action by virtue of the fact he, at all times stated herein, acted as the Vice President of the CPGH Board of Directors, having authority to enact and declare policies, practices, and customs employed by CPGH and its staff. This defendant is further alleged to have engaged in other illicit conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

5) Defendant, Irving Carlisle is party to this action by virtue of the fact he, at all times stated herein, acted as the Secretary/Treasurer of CPGH Board of Directors, having authority to enact and declare policies, practices, and customs employed by CPGH and its staff. This defendant is further alleged to have engaged in other illicit conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

6) Defendant Mark Dixson is a party to this action by virtue of the fact that he, at all times stated herein, acted as a voting member of the CPGH Board of Directors, having limited authority to enact or declare policies, practices, and customs employed by CPGH and its staff. This defendant is also alleged to have engaged in other illicit conduct in furtherance of the conpiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

7) Defendant Sal Mattero is a party to this action by virtue of the fact

that he, at all times stated herein, acted as a voting member of the CPGH Board of Directors, having limited authority to enact or declare policies, practices, and customs employed by CPGH and its staff. This defendant is also alleged to have engaged in other illict conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

8) Defendant Steve Manley is a party to this action by virtue of the fact that he, at all times stated herein, acted as a voting member of the CPGH Board of Directors, having limited authority to enact and declare policies, practices, and customs employed by CPGH and its staff. This defendant is also alleged to have engaged in other illicit conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

9) Defendant Russell Peterson is a party to this action by virtue of the fact that he, at all times stated herein, acted as a voting member of the CPGH Board of Directors, having limited authority to enact and declare policies, practices, and customs employed by CPGH and its staff. This defendant is also alleged to have engaged in other illicit conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

10) Defendant Mark Premo is a party to this action by virtue of the fact that he, at all times stated herein, acted as a voting member of the CPGH Board of Directors, having limited authority to enact and declare policies, practices, and customs employed by CPGH and its staff. This defendant is also alleged to have

engaged in other illicit conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

11) Defendant Steve Horn is a party to this action by virtue of the fact that he, at all times stated herein, acted as a voting member of the CPGH Board of Directors, having limited authority to enact and declare policies, practices, and customs employed by CPGH and its staff. This defendant is also alleged to have engaged in other illicit conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

12) Defendant Gregg Montonaga is party to this action by virtue of the fact that he, at all times stated herein, acted as a voting member of the CPGH Board of Directors, having limited authority to enact and declare policies, practices, and customs employed by CPGH and its staff. This defendant is also alleged to have engaged in other illicit conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

13) Defendant Debra Shuey is a party to this action by virtue of the fact that she, at all times stated herein, acted as a voting member of the CPGH Board of Directors, having limited authority to enact and declare policies, practices, and customs employed by CPGH and its staff. This defendant is also alleged to have engaged in other illicit conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff This defendant, believed to be a resident of the State of Alaska and a citizen of

the United States, is being sued in both her personal and official capacities.

14) Defendant John Bramante is a party to this action by virtue of the fact that he, at all times stated herein, acted as a voting member of the CPGH Board of Directors, having limited authority to enact and declare policies, practices, and customs employed by CPGH and its staff. This defendant is also alleged to have engaged in other illicit conduct in furtherance of the conspiracy alleged, all of which violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

15) Defendant Michael T. Blake, D.O., is a party to this action by virtue of having willfully engaged in, and promoting or facilitating others to also willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of CPGH) violated the constitutional, statutory and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

16) Defendant Jason Helton is a party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to also willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of CPGH) violated the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

17) Defendant Rachel Gilliland is a party to this action by virtue of her having willfully engaged in, and promoting or facilitating others to also willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of CPGH) violated the constitutional, statutory, and common law rights of

the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in both her personal and official capacities.

18) Defendant Debra A. Blizzard is a party to this action by virtue of her having willfully engaged in, and promoting or facilitating others to also willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of CPGH) violated the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in both her personal and official capacities.

19) Defendant Katelin E. Himes is a party to this action by virtue of her having willfully engaged in, and promoting or facilitating others to also willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of CPGH) violated the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in both her personal and official capacities.

20) Defendant Matthew M. Meade is a party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to also willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of CPGH) violated the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

21) Defendant Daine J. Cronin is a party to this action by virtue of her having willfully engaged in, and promoting or facilitating others to also willfully engaged in, conduct which (in conformance with the illicit policies, practices, and

customs of CPGH) violated the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in both her personal and official capacities.

22) Defendant Michael Levy (In his official capacity as the Medical Director for the Nikiski Fire Department) is a party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of various law enforcement agencies including the Alaska State Troopers) violates the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

23) Defendant Levi Doss is a party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of various law enforcement agencies including the Alaska State Troopers) violates the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in both his personal and official capacities.

24) Defendant Jessica Smith is party to this action by virtue of her having willfully engaged in, and promoting or facilitating others to willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of various law enforcement agencies including the Alaska State Troopers) violates the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in her personal and official capacities.

25) Defendant Henry Kane is party to this action by virtue of his having

willfully engaged in, and promoting or facilitating others to willfully engage in, conduct which (in conformance with the illicit policies, practices, and customs of various law enforcement agencies including the Alaska State Troopers) violates the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in his personal and official capacities.

26) Defendant Cy Cox is a party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to willfully engaged in, conduct which (in conformance with the illicit policies, practices, and customs of various law enforcement agencies including the Alaska State Troopers) violates the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in his personal and official capacities.

27) Defendant T.J. Cox is a party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to willfully engaged in, conduct which (in conformance with the illicit policies, practices, and customs of various law enforcement agencies including the Alaska State Troopers) violates the constitutional, statutory, and common law rights of the plaintiff. This defendant, beleived to be both a resident of the State of Alaska and a citizen of the United States, is being sued in his personal and official capacities.

28) Defendant Mark Pearson (Supervisor of the Major crimes Unit of the Alaska State Troopers (Detachment E) in Soldotna Alaska) is party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to also willfully engaged in, conduct which (in conformance with the illicit policies, practices, and customs of various law enforcement agencies with whom he is directly affilliated) violated the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska

and a citizen of the United States, is being sued in his personal capacity.

29) Defendant Samuel J. Webber is a party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to also willfully engage in, conduct which (in conformance with the illicit policies, practices and customs of various law enforcement agencies with whom he is directly affiliated) violated the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in his personal capacity.

30) Defendant Joseph Minnick is a party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to also willfully engage in, conduct which (in conformance with the illicit policies, practices and customs of various law enforcement agencies with whom he is directly affilliated) violated the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in his personal capacity.

31) Defendant Casey Hershberger is a party to this action by virtue of his having willfully engaged in, and promoting or facilitating others to also willfully engage in, conduct which (in conformance with the illicit policies, practices and customs of various law enforcement agencies with whom he is directly affilliated) violated the constitutional, statutory, and common law rights of the plaintiff. This defendant, believed to be both a resident of the State of Alaska and a citizen of the United States, is being sued in his personal capacity.

32) Plaintiff further avers upon the topic of capacity where is applied to any corporate officer designated as a "CPGH director" (hereinafter "Board Defendants") named within the caption that he reserves the right to rely upon the provisions of Civil Rule 25(d) where any such defendant(s) are, or may be subjected to be, public office successors arising from an operation of either law or of fact.

- 10 -

33) Plaintiff further avers upon the topic of capacity where it applies to defendant(s); Blake, Helton, Gilliland, Blizzard, Himes, Meade or Cronin (the "CPGH defendants"), defendant(s) Levy, Doss, Smith, Cy Cox or T.J. Cox (hereinafter "NFD defendants), and defendant(s); Pearson, Webber, Minnick or Casey Hershberger (the "AST defendants") that, at all times stated herein, these defendants are alleged to have been acting under the color of local, state or federal law.

## PART II:  FACTUAL BASIS PERTAINING TO ALL DEFENDANTS

1) On or about June 24, 2017 at around 8:30 pm the Soldotna Public Safety Communications Center (PSCC) received an emergency 911 call regarding an unconscious male who was not breathing.

2) Paramedics from the Nikiski Fire Department (NFD) were either dispatched or "...showed up to help out [because] of the nature of the call..." even though many of them were off duty at the time.

3) When NFD defendants arrived at the scene they observed two frantic women attempting to perform CPR upon an unconscious man (the plaintiff), who was laying on the ground near a silver SUV, in an otherwise vacate lot well of the roadway.

4) According to sworn testimony later obtained from NFD defendant Smith there was no evidence of injured persons, criminal activity, or other indications that an automobile accident had taken place, or played a role in, these events prior to the time the NFD defendants arrived on scene.

5) Official records disclosed to the plaintiff indicate that the ambulance crew consisted of defendant(s) Jessica Smith, Henry Kane, Cy Cox and T.J. Cox.

6) Upon information and belief, first responders also included Nikiski Fire Captain Levi Doss who acted in a supervisory role over the other NFD defendants.

7) Almost immediately after the NFD defendant(s) arrived they also contacted, and actively began assisting, local law enforcement (the Alaska State Troopers) in regards to what was being characterized by defendant Doss in official radio traffic

being used between NFD and PSCC as being a "...3500 issue..."

8) To date, and even when under the compulsion of subpeona and being sworn to oath before a state superior court, no NFD defendant has been willing to disclose (even admit to having knowledge) as to the meaning of the "...3500 issue.." verbage used while they communicated on public safety radio channels for official purposes with other governmental agencies that day.

9) During the subsequent criminal court proceedings regarding alleged <u>Fourth Amendment</u> violations, defendant Hershberger testified that the "...3500 issue..." radio code is a term used by law enforcement to indicate criminal activity which would be associated with controlled substances, <u>State v McLaughlin</u>, 3KN-17-718 Cr., (Still pending before the state superior court).

10) That the covert investigative activities employed by NFD defendants that day also included, but were not limited to, detaining the plaintiff without lawful authority and against his expressed will for purposes having nothing to do with providing medical care.

11) That the covert investigative activities employed by the NFD defendants that day also included, but were not limited to, the collection of evidence solely for law enforcement purposes (a non-consentual and warrantless four (4) vile blood draw) which was never used for any known medical purpose.

12) That the covert investigative activities employed by the NFD defendants that day also included, but were not limited to, exchanging photographic and other types of investigatory information with PSCC and AST defendant(s) Hershberger.

13) That the covert investigative activities employed by the NFD defendants that day also included, but were not limited to, the use of subterfuge directed at concealing their illicit cooperation with law enforcement's warrantless intrusions.

14) That the NFD defendants attempted to conceal their illicit cooperation with law enforcement officials through the subterfuge of administering unwarranted

medical care they knew (admit) was not needed over the expressed objections of the plaintiff at that time.

15) Upon information and belief, these covert investigative activities and tactics are part of a well developed and often used subterfuge employed by the NFD, CPGH and AST defendants acting in concert for the purposes of circumventing civil rights in the furtherance of illicit law enforcement purposes.

16) Upon information and belief, these covert investigative activities and tactics are part of a well developed and often used subterfuge employed by the NFD, CPGH and AST defendants acting in concert for the purpose of boosting emergency room usage numbers for fraudulent purposes associated with obtaining federal funding and grants and fraudulent billing to medicaid and medicare.

17) That subsequent to defendant Hershberger's initial conversation with defendant Doss Hershberger asked PSCC dispatchers to instruct "...CPGH security..." to detain the plaintiff who may "...try to take off..." before he could arrive.

18) During the subsequent criminal court proceedings regarding alleged Fourth Amendment violations, defendant Hershberger testified that when he had given that instruction he lacked probable cause to arrest and had found absolutely no evidence of criminal activity at the scene.

19) That in response to defendant Hershberger's request to detain, CPGH staff, immediately upon his arrival at CPGH and over his objections, removed and seized the plaintiff's clothing so that he would not be able to leave thier facility until defendant Hershberger arrived.

20) That CPGH defendant(s) Blake and his support staff knew the plaintiff, who was conscious and lucid after being revived, had been (and still was) objecting to being subjected to any form a medical treatment being performed.

21) Upon information and belief, CPGH defendant Blake's support staff included, but may not have been limited to, defendant(s) Rachel Gilliland, Debra Blizzard,

Katelin Himes, Matthew Meade, and Dianne Cronin.

22) Upon information and belief, defendant Blake excercises a supervisory role over his support staff, the parameters of which are prescribed by law, and which leads them to work in close concert when acting in their professional capacities.

23) Upon information and belief, CPGH defendant(s) have an extremely limited window of legal authority to medically treat persons capable of, and who in fact are, objecting to medical treatment under their care.

24) Upon information and belief, NFD defendant(s) have an extremely limited window of legal authority to medically treat persons capable of, and who in fact are, objecting to medical treatment under their care.

25) Upon information and belief, defendant Blake's "authorization" of the non-consentual blood draw occurred after the fact, and at the request of law enforcement (defendant Hershberger), as part of a routinely employed set of unwritten CPGH policies directing CPGH staff to surrepticiously assist law enforcement in their investigative activities.

26) Upon information and belief, these local law enforcement agents included, but were not limited to, defendant(s) Mark Pearson, Samuel J. Webber, Joseph Minnick and Casey Hershberger.

27) Upon information and belief, in this instance, the after-the-fact written blood draw authorization appearing within CPGH's medical records as attributable to defendant Blake was actually entered by defendant Himes at the behest of defendant Hershberger in an attempt to conceal the fact of defendant Kane's having illicitly performed the blood draw BEFORE the plaintiff even arrived at CPGH.

28) Althought at least two other NFD defendants have suggested that it was they who performed the illicit blood draw, it is defendant Kane's initials which appear upon the blood tubes.

29) When questioned about NFD's authority to have acted in this manner, and

while testifying under oath, NFD defendant Jessica Smith admitted that neither she of her co-workers possessed lawful powers to detain or arrest.

30)  When questioned about NFD's authority to have acted in this manner, and while testifying under oath, NFD defendant Jessica Smith admitted the neither she or her co-workers possess certification to engage in law enforcement activities by the Police Standards Counsel for the State of Alaska.

31)  When questioned about NFD's authority to have acted in this manner, and while testifying under oath, NFD defendant Jessica Smith could not (or would not) cite any specific medical or legal authority by which she could justify the conduct and activities she is alleged to have engaged in as set forth in numbers 1-30 above.

32)  That when questioned about NFD's authority to haved acted in this manner, and while testifying under oath, NFD defendant Jessica Smith freely admitted that she (and the remaining NFD defendants) routinely rely upon, and routinely use, the police powers of local law enforcement for the purpose of imposing their pretextual medical opinions upon those who resist NFD's efforts to medically treat them or to transport them to CPGH.

33)  Upon information and belief,  the conduct engaged in by NFD and CPGH as is is alleged herein frequently results in the unlawful and non-consentual detention or medical treatment of persons that these defendants, acting in concert, have detained using these illicit practices to administer medical care not actually needed.

34)  When questioned about NFD's authority to have acted in this manner, and while testifying under oath, NFD defendant Jessica Smith stated that she (and the remaining NFD defendants) routinely rely upon their "standing order" protocols as they are set forth by their "sponsoring physician" defendant Michael Levy.

35)  That the requirement to have a "sponsoring physician", and adhere to his or her directives,  is made mandatory upon all NFD defendants  by state law thereby granting defendant Levy an official supervisory and policy making authority over

authority over all NFD defendant(s) named herein.

36) Upon information and belief, officially promulgated "standing orders" and their associated medical protocols contained within NFD's Medical Operations Manual do not authorize, and/or expressly prohibit, most of the conduct attributable to the NFD defendant(s) as set forth in allegation numbers 1-30 above.

37) During the subsequent criminal court proceedings regarding alleged Fourth Amendment violations, and while testifying under oath, defendant Levy has readily admitted that the NFD defendant(s) routinely engage in such illicit practices, deviated from his written "standing order" medical protocols, and have "...been doing that down there for years..."

38) Upon information and belief, and by operation of state statutory law, there exists other quasi-medical protocols which were developed by a coalition of local medical practitioners and others within the area's medical community which would include both defendant Levy and one or more of members of GPGH's Board of Directors.

39) Upon information and belief, this same coalition of health care officials has surrepticiously conspired with unqualified non-medical persons within the law enforcement community to develop additional local use protocols which are directed at channeling even non-consenting patients into CPGH's care as a means of inflating statistical information regarding community health care needs.

40) Upon information and belief, both the NFD and the CPGH defendants engage in these illicit practices as part of a scheme to defraud state and federal agencies who provide public funding for care of indigents, medicaid or medicare receipiants (like the plaintiff), or the uninsured.

41) Upon information and belief, these surrepticious procedural protocols also instruct local paramedics, EMTs, and other non-law enforcement first responders to collect evidence for the police, teach them how to do so in a manner which does not taint the prospect of future prosecutions against those who they purport to have

provided medical care and, if necessary, to breach medical ethics protocols in the furtherance of these illicit activities.

42) Upon information and belief, most of the investigatory activities which are prescribed within these surrepticious and unwritten procedural protocols are expressly forbidden conduct for any of the currently named defendants whom hold a professional license to engage in the practice of medicine as a matter of state and federal constitutional and medical practioner law.

43) Upon information and belief, the state and federal provisions of law that expressly forbid the conduct alleged above are widely known and clearly established so as to protect the public from unjustified governmental and/or quasi-governmental intrusion, and are of such a nature that both law enforcement officials and medical practitioners of any variety would have a professional duty to be aware of (and to adhere to) those provisions.

44) That Central Peninsula General Hospital's (CPGH) unlawful detention and non-consentual medical care of the plaintiff began on June 24, 2017 at approximately 9:40 pm after he was delivered there by the NFD defendants.

45) Upon information and belief, neither Central Peninsula General Hospital or any of its facility staff have lawful authority to detain or arrest anyone.

46) That from the moment of his arrival at CPGH the plaintiff made it clear he was objecting to being admitted into their facility or receiving medical treatment of any kind.

47) As part of his attempts to protect himself from these illicit governmental actions, and in an effort to maintain his personal autonomy, the plaintiff refused to give any of these officials or medical staff involved his legitimate name or any other identifying information.

48) That as a direct result of these efforts to preserve his constitutionally protected rights of privacy and autonomy, and as part of the subterfuge being used

in the furtherance of the underlying conspiracy alleged, the plaintiff (a medicaid receipiant) was criminally charged by defendant Hershberger with felony theft and attempted theft of those services he had repeatedly been attempting to refuse.

49) That because the plaintiff is a medicaid receipiant he would have no motive to attempt a theft of services, a fact he made known to both CPGH staff (Cronin), and defendant Hershberger during the initial confrontation with these officials.

50) That at no point during the course of these events did any other basis exist, or is not alleged to have existed, by which the subsequent dentention and arrest of plaintiff by defendant Hershberger or CPGH staff can be lawfully justified.

51) That the felony theft charge was voluntarily abandon by local prosecutors three days later when a state superior court judge declared the allegations without foundation sufficient to establish probable cause, chastining state prosecutors in the process, State v Mclaughlin, 3KN-17-718 Cr., [Bail hrg 6/27/17 @ 3:15 pm].

52) That to date, no effort has been made by state prosecutors to revive or further pursue the felony theft charges or even present them to the grand jury.

53) That defendant Hershberger added two additional "nusiance offense" charges to the plaintiff's booking record (disorderly conduct and resisting arrest) in the furtherance of his pretextual subterfuge and as a method of justifying a subsequent physical assault upon plaintiff by defendant(s) Hershberger and Helton which later occurred during Hershberger's illicit arrest for felony theft.

54) That the validity of these additional "nusiance offenses" has also since been questioned by two state superior court judges and remain open matters before the state court, State v McLaughlin, 3KN-17-718 Cr..

55) That defendant Hershberger also used the "theft" pretext as a basis for an illicit search and seizure of the plaintiff's personal effects and clothing, as well as some of the medical records being generated by CPGH on the day of plaintiff's arrest and long before he obtained a warrant or purportted to have probable cause.

56) During the subsequent criminal court proceedings regarding alleged <u>Fourth</u> <u>Amendment</u> violations, and while testifying under oath, defendant Hershberger admits that almost immediately after his arrival at CPGH, and after the plaintiff was no longer in the custody of the NFD defendants, he had an illicit conversation with NFD defendants whom disclosed plaintiff's HIPPA protected healthcare information which included their perceptions of his medical condition and details of their care.

57) That even where defendant Hershberger's pretext for involving himself in these events alleged the need to aide NFD and CPGH medical staff because plaintiff was being "...combative and beligerent..," objective time stamp evidence indicates that Trooper Hershberger spent no less than fifteen (15) minutes conspiring with NFD and CPGH staff concerning the initail search of the plaintiff's clothing and a medical validation for the illicit blood draw before even initiating contact with the plaintiff.

58) That defendant Hershberger failed to collect and preserve audio records of most of the conversations he had with NFD and CPGH defendant(s), and staged at least one with defendant Meade concerning CPGH's seizure of the plaintiff's clothing.

59) That the contraived audio in question depict defendant Meade attempting to explain away CPGH's enforcement of their unlawful detention at the behest of defendant Hershberger by explaining that CPGH staff had seized plaintiff's clothing so, "...he wouldn't leave because [defendant Blake] want[ed] to treat him..."

60) That during the entire four hour period in which the plaintiff remained at CPGH prior to his illegal arrest by defendant Hershberger, no actaul medical care or attention was ever administered to the plaintiff.

61) That subsequent having this illicit conversation with the CPGH and NFD defendants, defendant Hershberger barged into the private medical bay where the plaintiff was being detained by CPGH staff and began an un-mirandized interrogation.

62) That defendant Hershberger continued these illicit activities over the

plaintiff's repeated and unequivocal objections and demands to have an attorney be present during his attempts to question him.

63) That as part of this illicit course of conduct, and in the furtherance of attempting to maintain appearances of the legitimacy of his subterfuge, defendant Hershberger also sought to persuade the plaintiff to sign a release of his medical information to facilitate these illicit activities.

64) That defendant Hershberger did manage to preserve audio recordings from his attempts at interrogating the plaintiff while he was being detained by CPGH.

65) That defendant Hershberger also succeeded in obtaining the illicit and voluntary cooperation of at least fourt (4) CPGH staff members, including defendant Blake the attending emergency room physician, all of whom condoned and/or encouraged Hershberger's illicit behavior even where CPGH staff conduct offended many of their professional regulations, standards and norms of professional practice.

66) That at least two of the CPGH defendants (Cronin and Meade) who witnessed this misconduct appear in audio recordings actively encouraging the illicit conduct while it was being perpetrated upon the plaintiff by Hershberger.

67) That at one point during these events a CPGH staff member, believed to be defeandant Meade, actively joined in the illicit interrogation telling the plaintiff he "...should just answer [Hershberger's] questions..." is he wanted them to leave the emergency room bay.

68) That plaintiff's clothing was searched by defendant Blizzard or Gilliland in the presence of, and at the behest of, defendant Hershberger who later seized those items without a warrant or probable cause to do so even though the contained no contraband or had any other legitimate evidentary value.

69) Upon information and belief, the concerted methods of detention employed here by law enforcement and CPGH staff are part of a semi-official and routinely used set of patient handling policies and practices which are known to, and have

been ratified by, the CPGH Board of Directors as a semi-official set of policies, practices and customs to be employed by CPGH staff in furtherance of the underlying conspiracy alleged.

70) That in an effort to establish probable cause for these illicit actions, and the plaintiff subsequent arrest, defendant Hershberger solicited the assistance of defendant Blake to conduct a non-consentual and warrantless search of plaintiff's illicitly obtained blood samples.

71) That these blood samples were illicitly obtained prior to the plaintiff's arrival at CPGH by NFD defendant Kane who initialed the blood tubes before they were submitted to CPGH.

72) That portions of the conversation between defendant(s) Hershberger and Blake took place just outside the emergency room bay door and within earshot of the plaintiff which permitted him to hear those conversations.

73) That among the falsehood conveyed to Blake by Hershberger in an attempt to suborn and help justify his assistance with Hershberger's portion of this scheme was an allegation that plaintiff had absconded from parole, a pretextual allegation which would allow Blake to disclose HIPPA protected information.

74) That defendant Hershberger willfully and intentionally failed to collect and preserve any of the audio recording between himself and defendant Blake, later even providing sworn testimony that the conversations had never actually occurred.

75) That as part of his attempts to conceal his illicit activities, defendant Hershberger also failed to collect and preserve CPGH security videos which would have depicted this misconduct even though they would have purportedly supported his disorderly conduct and resisting arrest allegations.

76) That despite defendant Hershberger's sworn denials, evidence indicating he and defendant Blake had these illicit conversations has been objectively preserved in audio recordings submitted by other law enforcement personal who were present at

the same time these conversations occurred.

77) That these additional audio recordings made by others present, and turned over to the plaintiff in related criminal proceedings, depict the first 28 seconds of defendant Blake's entry into the conversation with all three persons sharing a hearty laugh concerning the plaintiff's objections to the unwanted medical care and other violations of his constitutional rights.

78) That within the 28 second portion preserved before the recording device was turned off, defendant Blake can also be heard beginning an unsolicited oration pertaining to the plaintiff's specific medical condition and care alleged to have been provided by the NFD defendants.

79) That evidence indicating that defendant(s) Blake and Hershberger had these illicit conversations has also been objectively preserved in medical records which indicate that Blake ordered defendant Himes to perform an "ethanol screening" test at around the same time these conversations occurred.

80) That the results of these illicitly performed tests failed to produce the results sought thus failed to establish probable cause for the purposes of seeking a warrant or effectuating a lawful arrest for the crime of DUI.

81) That when defendant Hershberger arrived at CPGH (the premise of a third part) with the intent to conduct a search, and in fact commenced that search by entering the premise through an unconventional ingress (the emergency room loading bay doors) he had no warrant authorizing a search or probable cause which would have permitted him to search for, or arrest anyone.

82) During the subsequent criminal court proceedings regarding alleged Fourth Amendment violations, and while testifying under oath, defendant Hershberger admitted he had not been summoned to CPGH by any staff member of that facility in association with his professional capacity as a law enforcement officer.

83) During the subsequent criminal court proceedings regarding alleged Fourth

<u>Amendment</u> violations, and while testifying under oath, defendant Hershberger admitted to the operative facts alleged in numbers 81 and 82 above as being true and correct where they pertain to an abscence of authority to search or probable cause to arrest.

84) That defendant Hershberger's illict search efforts began with examination and seizure of plaintiff's confidential medical records pertaining to plaintiff's involuntary detention by CPGH and the physical intrusions of his person.

85) That CPGH defendant Cronin was recorded permitting defendant Hershberger to examine and seize medical records and to otherwise provide him with plaintiff's HIPPA protected healthcare information.

86) That CPGH defendant Cronin also appears within audio recordings of these events actually assisting defendant Hershberger in conducting his un-mirandized interrogation of the plaintiff which occurred during the course of these events.

87) That at least two other named CPGH defendant(s) (Blizzard and Meade) were also recorded either permitting defendant Hershberger to search or simply turning over protected information to him in a virtually unsolicited manner.

88) That the plaintiff was "discharged" from CPGH custody (formally arrested for the pretextual theft offense by defendant Hershberger) shortly after midnight on the morning of June 25, 2017.

89) Upon information and belief, CPGH waited until the following morning to "discharge" the plaintiff so the record of his stay would permit them to bill the plaintiff's medicaid account for an additional day of emergency room use.

90) That during this process plaintiff was brutally assaulted by defendant(s) Helton and Hershberger for demanding to speak with a physician and to be given his personal clothing.

91) The shortly after the assualt plaintiff was subsequently subjected to further public humiliation when defendant(s) Helton and Hershberger dragged him

through several common areas, the lobby, and the parking lot of CPGH while he was completely naked.

92) That a majority of the egregious and unwarranted assault upon the plaintiff has been objectively preserved in an audio recording depicting these events and the verbal exchanges before, during, and after the assualt.

93) Upon information and belief, defendant Hershberger intentionally failed to collect and preserve the CPGH security videos because they would objectively show that the plaintiff had done absolutely nothing to proximate the assualt itself, or the pretextual charges for disorderly conduct and resisting arrest which followed.

94) That as part of his ongoing investigation into the conspiracy between local law enforcement and local medical practitioners alleged and exemplified above, the plaintiff has uncovered 24 other instances of similar misconduct from the confines of the local jail.

95) That one of the more flagrent examples of this ongoing pattern of illicit conduct alleged and exemplified above involved local paramedics reviving a male patient and, instead of transporting him to CPGH, taking him to his mother's home where they were met by police seeking to search both the patient and his mother's residence.

96) Upon information and belief, local law enforcement officials (including the AST defendants) routinely and unlawfully use local paramedics and CPGH staff to search for, collect, and/or preserve evidence for later use in criminal proceedings that would otherwise have been unattainable to them but for their use of pretextual ruse involving unwannted and/or unwarranted medical care to circumvent a person's constitutional protections.

97) Upon information and belief, local law enforcement officials (including the AST defendants) routinely and unlawfully use local paramedics and CPGH staff to illegally detain persons whom law enforcement would otherwise have no lawful

authority to detain but for their use of pretextual ruse involving unwanted and/or unwarranted medical care to circumvent a person's constitutional protections.

98) Upon information and belief, local law enforcement officials (including the AST defendants) routinely, unlawfully, and with full knowledge and acquiencence of both CPGH staff and its Board of Directors, use CPGH premises as a _de facto_ detention center in the furtherance of these illicit, fraudulent, and otherwise pretextual objectives while billing the federal govrenment for these illicit stays.

99) In this particular instance, these illict prectexts were deliberately and willfully employed by AST defendant Hershberger to detain, search, and subsequently seize the plaintiff without probable cause to establish he had committed the crime of theft.

100) In this particular instance, these illicit pretexts were deliberately and willfully employed by defendant Hershberger to detain, search, and subsequently seize the plaintiff without probable cause to establish he had committed the crimes of disorderly conduct or resisting arrest.

101) In this particular instance, these illicit pretexts were deliberately and willfully employed by defendant Hershberger specifically for the purposes of triggering operation of state court rules allowing the public access to privileged medical information which would otherwise been inaccessible to him for the want of probable cause so it could later be used in applying for search warrants involving allegations for a completely different crime of DUI.

102) In this particular instance, these illicit pretexts were deliberately and willfully employed by AST defendant(s) Pearson and Minnick to later seek and obtain search warrant(s) for the plaintiff's bodily fluids based solely upon the evidence they knew had been invalidated for probable cause purposes by Superior Court Judge Charles Huguelet on June 27, 2017.

103) In this particular instance, these illicit pretexts were deliberately

and willfully employed by AST defendant(s) Pearson and Minnick to later seek and obtain search warrant(s) for the plaintiff's bodily fluids based solely upon the evidence they knew had been falsified by defendant Hershberger as a basis for the probable cause statements within their search warrant affidavits.

104) Upon information and belief, this illicit activity was effectuated when, on June 27, 2017 after learning of Judge Huguelet's probable cause ruling, defendant Pearson instructed his subbordinate AST defendant Minnick to employ the collective knowledge doctrine of probable cause law (thereby concealing defendant Hershberger's illicit conduct and lack of probable cause) and go judge shopping for a District Court Judge unframilar with the case who would authorize a search warrant for the plaintiff's medical records and bodily fluids.

105) In this particular instance, these illicit pretexts were deliberately employed again where, during a period between July 5 to July 7, 2018 AST defendant(s) Pearson and Webber suborned false witness statements from NFD defendant(s) Kane, Smith, and T.J. Cox subsequent to the impeachment (false testimony) allegations being raised regarding defendant Jessica Smith's sworn testimony pertaining to who had actually performed the illicit blood draw and when it was performed.

106) Upon information and belief, both the NFD and CPGH defendant(s) are aware of the illicit nature of these pretextual activities and routinely further these efforts through spoliation of objective evidence (such as the CPGH security video footage) thereby concealing their own involvement, and depriving criminal defendants of potentially exculpatory evidence, thereby denying to them due process of law.

107) That plaintiff's independent investigations into the CPGH defendant(s) fraudulent conduct has lead him to evidence, other instance or reports of, fraud being committed by CPGH including double billing, no-show billing, and cross-billing practices suggestive of embezzlement, kick-back schemes and other forms of graft.

108) Upon information and belief, CPGH Board defendant(s) have ratified such

illicit schemes in an effort to fund its aggressive expansion programs using funds fraudulently obtained from the federal government.

109) That on October 6, 2017 CPGH Board President Trena Richardson appeared at, and sat through four (4) hours of, and evidentary hearing associated with the concomitent criminal matter State v Mclaughlin, 3KN-17-718 Cr..

110) That on October 6, 2017 counsel for CPGH, Robert Molloy, also appeared during these proceedings and succeeded in obtaining a quash of plaintiff's witness subpeonas for three ranking CPGH officials (including defendant Blake) upon the generalized pretext that any knowledge possessed by these CPGH officials would be "privileged", State v Mclaughlin, 3KN-17-718 Cr..

111) That subsequent to these proceedings counsel for CPGH, Robert Molloy, later told the state superior court that any security videos of the incidents that were in issue had been destroyed as part of a "routine" retention practice.

112) Upon information and belief, defendant Richardson, acting as President of CPGH Board of Directors, had taken these unprecedented actions in an attempt to assess and/or limit CPGH's civil liability concerning CPGH staff's involvement in plaintiff unlawful detention after the plaintiff had contacted, subpeonaed, or written to several of the CPGH staff involved requesting disclosure of information or threatening to bring this suit.

113) That on October 6, 2017, and shortly after the conclusion of the four hour hearing referenced above, defendant Richardson was witnessed having a rather animated conversation with local prosecutor Amy Fenske in the court house lobby just outside the court room in which the hearing had been held.

114) That in regards to CPGH defendant Michael Blake specifically, counsel for CPGH Robert Molloy subsequently filed a written request with the superior court seeking to have at least two weeks advance notice in the scheduling of any future proceedings which may require defendant Blake's presence of testimony.

115) That as a result of these outrageous and flagrently unconstitutional acts and activities the plaintiff has sufferred personal injury and intrusion of person (battery) at the hands of the defendants.

116) That as a result of these outrageous and flagrently unconstitutional acts and activities the plaintif has suffered economic and proprietal loss.

117) That as a result of these outrageous and flagrently unconstitutional acts and activities the plaintiff remains held as a pre-trial detainee for a period of time nearing two years.

118) That as a result of these outrageous and flagrently unconstitutional acts and activities the plaintiff has been subjected to mental anguish, mood swings and bouts of depression, and various other stressful an de-abilitating mental state(s) associated with his attempts to vindicte his constitutional rights and overcome the unlawful conditions with which he is currently faced.

119) That the named defendant(s) have also solicited the assistance of others in the furtherance of their attempts to conceal these illicit activities and also to oppress the plaintiff's excercise of rights associated with his criminal defense.

120) That this ancillary misconduct, actions undertaken by government agents or agencies not named within this suit, are the subject matter of a second civil action appearing as McLaughlin v McCloud, et. al, 3:18-cv-00085-TMB which currently proceeds before the United States District Court, District of Alaska at Anchorage.

## CLAIMS AND CAUSES OF ACTION

**I.  Illegal Search, Seizure, and False Arrest or Imprisonment.**

Plaintiff alleges that the named defendant(s)  singularly, jointly, or acting in concert did  knowingly and with  a willful and  deliberate indifference  to the plaintiff's civil rights  as they are  afforded and secured  under the  Fourth and Fourteenth Amendments to the United States Constitution;

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice or pretext and subterfuge, illegally seize the plaintiff's person, personal property, privileged papers and bodily fluids without a valid warrant, probable cause, or any other lawful justification,

2) Unlawfully,  maliciously,  and with  fraudulent intent,  embarked upon an unreasonable (illicit)  and criminal course  of conduct  in effectuating this same circumstance, and;

3) There by causing  personal injury  and other  constitutional harms  to be visited upon the plaintiff including, but not limited to, erroneous deprivation of his liberty,  intrusion upon his person (battery),  and the denial of  due process and equal protection under the law.


## CONSPIRACY ALLEGATION UPON COUNT NUMBER ONE

A. Plaintiff further alleges that, where the common facts pled above evidence a concerted effort and  "meeting of the minds"  directed at deliberately promoting and facilitating both the denial of,  and the interference with, plaintiff's civil rights and/or  the fraudulent schemes  of the  NFD and CPGH defendant(s)  as their collective objective,  all above  named defendants  (inclusive of all "CPGH Board" defendants), are named as co-conspirators as to count one.

## II. Malicious Prosecution With the Intent to Violate Civil Rights.

Plaintiff alleges that the named defendant(s) singularly, jointly, or acting in concert did knowingly and with a willful and deliberate indifference to the plaintiff's civil rights as they are afforded and secured under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution,

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice of pretext and subterfuge, deprive plaintiff of due process, Fourth and Fifth Amendment protections, and equal protection under the law,

2) Unlawfully, maliciously, and with fraudulent intent, seized, detained, and arrested the plaintiff without probable cause and upon a pretextual basis that,

3) When subsequently challenged before the state superior court two days hence resulted in a judicial decree invalidating the pretextual basis of those initial actions and allegations.

## CONSPIRACY ALLEGATION UPON COUNT NUMBER TWO

A. Plaintiff further alleges that, where the common facts pled above evidence a concerted effort and "meeting of the minds" directed at deliberately promoting and facilitating both the denial of, and the interference with, plaintiff's civil rights and/or the fraudulent schemes of the NFD and CPGH defendant(s) as their collective objective, all above named defendants (inclusive of all "CPGH Board" defendants), are named as co-conspirators as to count two.

III.  **Deprivation of Procedural Due Process/Violation of the "Brady" Rule.**

Plaintiff alleges that the named defendant(s) singularly, jointly, or acting in concert did knowingly and with a willful and deliberate indifference to the plaintiff's civil rights as they are afforded and secured under the <u>Fifth</u>, <u>Sixth</u>, and <u>Fourteenth Amendments</u> to the United States Constitution;

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice of pretext and subterfuge, deprive plaintiff of due process, <u>Fourth</u> and <u>Fifth Amendment</u> protections, and equal protection under the law by,

2) Unlawfully, maliciously, and with fraudulent intent, destroying, altering, concealing, or failing to collect and preserve evidence materially favorable to the plaintiff's associated criminal defense and/or establishing the existence of the governmental and police misconduct alleged herein,

3) There by causing personal injury and other constitutional harms to be visited upon the plaintiff including, but not limited to, erroneous deprivation of his liberty, intrusion upon his person (battery), and the denial of due process and equal protection under the law.

## CONSPIRACY ALLEGATION UPON COUNT NUMBER THREE

A. Plaintiff further alleges that, where the common facts pled above evidence a concerted effort and "meeting of the minds" directed at deliberately promoting and facilitating both the denial of, and the interference with, plaintiff's civil rights and/or the fraudulent schemes of the NFD and CPGH defendant(s) as their collective objective, all above named defendants (inclusive of all "CPGH Board" defendants), are named as co-conspirators as to count three.

## IV. Deliberate and Reckless Disregard for Substantive Due Process Rights.

Plaintiff alleges that the named defendant(s) singularly, jointly, or acting in concert did knowingly and with a willful and deliberate indifference to the plaintiff's civil rights as they are afforded and secured under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution,

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice of pretext and subterfuge, abuse governmental authority by creating a pretextual "special relationship" with the plaintiff when taking him into their custody against his will for the specific purposes of using that relationship as an instrument in their fraudulent schemes,

2) Unlawfully, maliciously, and with fraudulent intent, then abdicating upon the concomitent duty of care imposed upon defendant(s) by such special governmental relationships to protect him from harm which manifests from defendant's deliberate and reckless disregard for the plaintiff's personal safety and civil rights,

3) There by causing personal injury and other constitutional harms to be visited upon the plaintiff including, but not limited to, erroneous deprivation of his liberty, intrusion upon his person (battery), and the denial of due process and equal protection under the law.


## CONSPIRACY ALLEGATION UPON COUNT NUMBER FOUR

A. Plaintiff further alleges that, where the common facts pled above evidence a concerted effort and "meeting of the minds" directed at deliberately promoting and facilitating both the denial of, and the interference with, plaintiff's civil rights and/or the fraudulent schemes of the NFD and CPGH defendant(s) as their collective objective, all above named defendants (inclusive of all "CPGH Board" defendants), are name as co-conspirators as to count four.

**V. Intentional Deprivation of Equal Protection Under the Law. (Class of One)**

Plaintiff alleges that the named defendant(s) singularly, jointly, or acting in concert did knowingly and with a willful and deliberate indifference to the plaintiff's civil rights as they are afforded and secured under the <u>Fourth</u>, <u>Fifth</u>, <u>Sixth</u> and <u>Fourteenth Amendments</u> to the United States Constitution,

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice of pretext and subterfuge, abuse governmental authority by creating a pretextual "special relationship" with the plaintiff for the specific purpose of imposing disparity upon the plaintiff,

2) In furtherance of such disparate treatment, and while having no lawful justification to do so, unlawfully, maliciously and with fraudulent intent engaged in such forms of illicit conduct which were arbitrary, capricious, and prohibited by clearly established constitutional law,

3) There by causing personal injury and other constitutional harms to be visited upon the plaintiff including, but not limited to, erroneous deprivation of his liberty, intrusion upon his person (battery), and the denial of due process and equal protection under the law.


## CONSPIRACY ALLEGATION UPON COUNT NUMBER FIVE

A. Plaintiff further alleges that, where the common facts pled above evidence a concerted effort and "meeting of the minds" directed at deliberately promoting and facilitating both the denial of, and the interference with, plaintiff's civil rights and/or the fraudulent schemes of the NFD and CPGH defendant(s) as their collective objective, all above named defendants (inclusive of the "CPGH Board" defendants), are named as co-conspirators as to count five.

## VI. Violation of the False Claims Act, 31 U.S.C. § 3729(a).

Plaintiff alleges that the named defendant(s) singularly, jointly, or acting in concert did knowingly and with a willful and deliberate indifference to the plaintiff's civil rights as they are afforded and secured under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution,

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice of pretext and subterfuge, create a pretextual "special relationship" with the plaintiff for the specific purpuses of "...making, using, or caus[ing] to be used..," false records or billing statements in violation of 31 U.S.C. § 3729(a)(1)(A),

2) Unlawfully, maliciously, and with fraudulent intent, then presented those same false records and billing statements to government officials overseeing the federally funded medicare program with demand of payment for treatment and medical procedures the plaintiff had not consented to, did not need, or had not received in violation of 31 U.S.C. § 3729(a)(1)(B),

3) There by causing personal injury and other constitutional harms to be visited upon the plaintiff including, but not limited to, erroneous deprivation of his liberty, intrusion upon his person (battery), and the denial of due process and equal protection under the law.

### CONSPIRACY ALLEGATION UPON COUNT NUMBER SIX

A. Plaintiff further alleges that, where the common facts pled above evidence a concerted effort and "meeting of the minds" directed at deliberately promoting and facilitating both the denial of, and the interference with, plaintiff's civil rights and/or the fraudulent schemes of the NFD and CPGH defendant(s) as their collective objective, all above named defendants (inclusive of all "CPGH Board" defenadnts), are named as co-conspirators as to count six as it is provided for 31 U.S.C. § 3729(a)(1)(C).

## VII.  Assault, Battery, and Other Forms of Offensive Contact.

Plaintiff alleges that the named defendant(s) singularly, jointly, or acting in concert did knowingly and with a willful and deliberate indifference to the plaintiff's civil rights as they are afforded and secured under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice of pretext and subterfuge, create a pretextual "special relationship" with plaintiff thereby facilitating at least three separate and distinct instances of assault, battery, or other offensive physical contact (or apprehension thereof) to occur in furtherance of their illicit schemes,

2) Unlawfully, maliciously, and with fraudulent intent, committed these same reckless and outrageous acts in the pursuit of financial gain, and with the intent to harass, aggrieve, extort and otherwise cause bodily harm,

3) There by causing personal injury and other constitutional harms to be visited upon the plaintiff including, but not limited to, erroneous deprivation of his liberty, intrusion upon his person (battery), and the denial of due process and equal protection under the law.


## CONSPIRACY ALLEGATION UPON COUNT NUMBER SEVEN

A. Plaintiff further alleges that, where the common facts pled above evidence a concerted effort and "meeting of the minds" directed at deliberately promoting and facilitating both the denial of, and the interference with, plaintiff's civil rights and/or the fraudulent schemes of the NFD and CPGH defendant(s) as their collective objective, all above named defendants (inclusive of all "CPGH Board" defendants), are named as co-conspirators as to count seven.

## VIII. Negligence, Gross Negligence and Deliberately Reckless Conduct.

Plaintiff alleges that the named defendant(s) singularly, jointly, or acting in concert did knowingly and with a willful and deliberate indifference to the plaintiff's civil rights as they are afforded and secured under the <u>Fourth</u>, <u>Fifth</u>, <u>Sixth</u> and <u>Fourteenth Amendments</u> to the United States Constitution,

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice of pretext and subterfuge, abuse governmental and/or professional grants of official authority by creating a pretextual "special relationship" with the plaintiff when taking him into custody against his will,

2) Unlawfully, maliciously, and with fraudulent intent, then abdicating upon the concomitent duty of care imposed upon defendant(s) arising from such "special" governmental or professionally sponsored relationships to protect the plaintiff from harm with later manifest in the form of defendant(s) deliberate indifference and reckless disregard for the plaintiff's personal safety and civil rights,

3) There by causing personal injury and other constitutional harms to be visited upon the plaintiff including, but not limited to, erroneous deprivation of his liberty, intrusion upon his person (battery), and the denial of due process and equal protection under the law.


## CONSPIRACY ALLEGATION UPON COUNT NUMBER EIGHT

A. Plaintiff further alleges that, where the common facts pled above evidence a concerted effort and "meeting of the minds" directed at deliberately promoting and facilitating both the denial of, and the interference with, plaintiff's civil rights and/or the fraudulent schemes of the NFD and CPGH defendant(s) as their collective objective, all above named defendants (inclusive of all "CPGH Board" defendants), are named as co-conspirators as to count eight.

## IX. Third-party Spoliation of Evidence to Protect Co-conspirators.

Plaintiff alleges that the named defendant(s) singularly, jointly, or acting in concert did knowingly and with a willful and deliberate indifference to the plaintiff's civil rights as they are afforded and secured by the Sixth, Seventh and Fourteenth Amendments to the United States Constitution,

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice of conspiracy, pretext, and subterfuge, deprive the plaintiff of due process and those procedural rights, remedies, and avenues of redress afforded by the Sixth And Seventh Amendments of the U.S. Constitution,

2) Unlawfully, maliciously, and with fraudulent intent, conspired among their ranks in destroying, altering, concealing, or failing to collect and/or preserve evidence materially favorable to plaintiff's associated criminal defense and/or establishing the existence of governmental civil rights violations alleged herein in an effort to conceal the culpability and/or liability of themselves and their contemporaries, co-workers and co-conspirators,

3) There by causing procedural and constitutional harm(s) to be visited upon the plaintiff including, but not limited to, an inability to effectively present his legal claims due to spoliation, a resulting erroneous deprivation of liberty, and which may also effect the outcome of any proceedings arising from allegations brought within this complaint.

## X. Intentional Infliction of Emotional Distress.

Plaintiff alleges that the named defendant(s) singularly, jointly, or acting in concert did knowingly and with a willful and deliberate indifference to the plaintiff's civil rights as they are afforded and secured under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

1) Engaged in such acts and activities as alleged and exemplified above with the intent to, through the artifice of pretext and subterfuge, abuse governmental authority by creating a pretextual "special relationship" with the plaintiff when taking him into their custody against his will for the specific purpose of using that same special relationship as an instrument in their fraudulent schemes,

2) Unlawfully, maliciously, and with fraudulent intent, then abdicating upon the concomitent duty of care imposed upon defendant(s) arising from such "special" governmental and/or professionally sponsored relationship to protect the plaintiff from harms which later manifest in the form of defendant(s) deliberate indifference and reckless disregard for the plaintiff's personal safety and civil rights,

3) all of which was reckless, outrageous, and otherwise representing a gross deviation from clearly established constitutional law and societal norms which are associated with defendant(s) professional or governmental status, and;

4) which has caused the plaintiff to suffer constant and long term states of anxiety which subsequently manifest in such periodically appearing symproms as; self-isolation, loss of sleep, mood swings, bouts of de-abilitating depression and other forms of compulsive behavior such as over-eating and chronic masterbation.

## REMEDIES, REDRESS AND RELIEF SOUGHT

WHERETOFORE the plaintiff has suffered substantial injury in his rights as they are afforded and secured for him by the United States Constitution arising from conduct engaged in by the named defendants in violation of 42 U.S.C. § 1983,

WHERETOFORE the plaintiff has suffered substantial injury to his person, injury to rights federally afforded and constitutionally secured, and has otherwise been victimized by the defendant's quest to defraud the federal government through the artifice of asserting false claims for pay in violation of 31 U.S.C. § 3729(a),

WHERETOFORE the plaintiff has suffered substantial injury to his person, injury to rights federally afforded and constitutionally secured, economic loss and injury to his personal and professional reputation by conduct of the defendant(s) whereby he was unreasonably seized, searched and otherwise deprived of the right to equal protection under the law, plaintiff now seeks the following relief;

1) A jury trial upon the merits of each and every claim brought herein,

2) Economic damages for the loss of earnings, economic opportunity, tangible items of value, and other financial losses attributable to the defendant(s) conduct as will be proven at trial,

3) Non-economic damages in an amount exceeding $ 100,000.00 dollars derived from each named defendant for the infliction of personal injury, injury to civil rights, and intentional infliction of emotional distress as will later be proven at trial,

4) A stutorily permissible portion of any subsequent recovery made by party in real interest, United States of America, as provided for within the False Claims Act of 31 U.S.C. § 3730(d)(1),

5) Punitive damages as provided for in A.S. 09.17.020 in an amount which will be determined by a jury at trial,

6) A declaratory judgment providing that the defendant(s) conduct, as will

later be proven at trial, is; (1) fraudulent, (2) violative of clearly established constitutional law and the plaintiff's constitutional rights, and; (3) contrary to substantial public interests which require members of the general public to be free from such fruadulent government sponsored schemes and artifice,

7) Prospective relief in the form of an injunction that shall work to enjoin the named defendant(s), their affilliated agencies, public office successors (past, present and future), and those holding similar public office from engaging in such fraudulent and/or unconstitutional conduct, or employing such schemes, procedural practices, policies, or customs as alleged herein,

8) Appointment of a special master at the defendant's expense to oversee and supervise for purposes of reporting to this court, concerning defendant(s) overall complaince with any pre- or post-trial protective or corrective order(s) issued by this court for a period of at least one (1) calander year or until such time this court may deem appropriate to protect the public,

9) An award to the plaintiff for all costs and attorney's fees incurred by the plaintiff as a result of having to bring this action to obtain redress, and;

10) Any other remedies, redress or substantive relief that this court may so deem as being just, fair and equitable upon the cause.

### DECLARATION UNDER THE PENALTY OF PERJURY

The undersigned declares under the penalty of perjury that he is the plaintiff in the above action, that he has read the complaint, and that the infromation that is contained within the complaint is true and correct to the best of my knowledge.

SUBMITTED this the 27TH of MAY , 2019.

Michael L. McLaughlin
In Properia Persona
Plaintiff



Michael L McLaughlin #166227
℅ Wildwood Pretrial Facility
5 Cunagah Ave, Bldg #5
Kenai, Alaska    99611-7098

United States District Court
℅ Clerk of the Civil Court
222 West 7th Ave, Rm #4
Anchorage, Alaska   99513-7564

THIS LETTER WAS WRITTEN
BY AN INMATE AT WILDWOOD
CORRECTIONAL CENTER

UNITED STATES POSTAGE
PITNEY BOWES
$ 002.200
02 1P
0003163141    MAY 29 2019
MAILED FROM ZIP CODE 99611